PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TOMI WHITE BRYAN, individually
and on behalf of all others similarly
situated,

*Plaintiff-Appellee,*

v.

BELLSOUTH COMMUNICATIONS,
INCORPORATED,

*Defendant-Appellant.*

No. 03-1316

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., District Judge.
(CA-02-228-1)

Argued: February 24, 2004

Decided: July 28, 2004

Before LUTTIG, KING, and GREGORY, Circuit Judges.

---

Vacated and remanded by published opinion. Judge King wrote the
opinion, in which Judge Gregory joined. Judge Luttig wrote a dissent-
ing opinion.

---

## COUNSEL

**ARGUED:** Ashley B. Watson, BELLSOUTH CORPORATION,
Atlanta, Georgia, for Appellant. Michael Geoffrey Wimer, WIMER
& JOBE, Arden, North Carolina, for Appellee. **ON BRIEF:** Richard

S. Gottlieb, John B. Morris, KILPATRICK STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellant. Amiel J. Rossabi, FORMAN, ROSSABI, BLACK, P.A., Greensboro, North Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Defendant BellSouth appeals from the portion of a decision of the Middle District of North Carolina denying dismissal and remanding one of plaintiff Tomi Bryan's three claims to state court. *Bryan v. BellSouth Telecomms., Inc.*, No. 1:02CV00228, 2003 WL 262333 (M.D.N.C. Feb. 6, 2003). The court concluded that certain of Bryan's claims arose under federal law and were subject to dismissal under the "filed-rate doctrine." It declined to exercise supplemental jurisdiction and remanded to state court a single claim that it determined did not raise a federal question. BellSouth maintains that the court erred in failing to conclude that all of Bryan's claims posed federal questions and were barred by the filed-rate doctrine. For the reasons explained below, we vacate and remand.

I.

A.

BellSouth, as a provider of interstate public telecommunications services, is required by law to contribute a portion of its revenues to the federal Universal Service Fund ("USF") to ensure affordable telecommunications services to rural and low-income areas, schools, hospitals, and the like. *See* 47 U.S.C. § 254; 47 C.F.R. § 54.706(a). The percentage of its revenues that a carrier must contribute to the USF is established by the Federal Communications Commission ("FCC") and is adjusted on a quarterly basis to ensure sufficient funding of the USF. *See* 47 C.F.R. § 54.709(a).

The FCC permits telecommunications carriers such as BellSouth to recover the costs of their contributions to the USF from their custom-

ers, either through increased rates or through a separate line item on the customers' bills. *See* In the Matter of Federal-State Joint Board on Universal Service, 17 F.C.C.R. 24952, ¶ 42 (2002). Prior to April 1, 2003, certain carriers who recovered their USF contributions through line items would charge customers significantly more than the contribution required based on their bills. *Id.* ¶ 46. These carriers attributed the need for such "marking up" to "the lag between the reporting and assessment of revenues, uncollectibles, and administrative costs." *Id.* In an effort to "address consumer concerns regarding disparate contributor recovery practices," *id.* ¶ 40, the FCC forbade marking up the line-item charge, effective April 1, 2003. *Id.* ¶ 45.

Billing practices such as recovery of USF contributions are established in a carrier's "Schedule of Charges," *see* 47 U.S.C. § 203, also known as its "tariff." A carrier's tariff must be filed with the FCC and kept open for public inspection.[1] *Id.* § 203(a). In addition, a carrier may not charge more or less than the rates set forth in its tariff, and it may not refund or remit to a customer any of the charges contained in the tariff. *Id.* § 203(c).

As reflected in its tariff, BellSouth chooses to recover its USF contribution from its customers through a line item on the customers' bills, which it denotes as the "Federal Universal Service Charge" ("FUSC"). The applicable tariff establishes the portion of BellSouth's USF contribution that will be recovered from customers, and it calculates, based on the number of telephone lines and the amount sought to be recovered, that the end user of each line will be charged an FUSC of $0.53 per month.

## B.

On February 22, 2002, Bryan filed suit against BellSouth in the Superior Court of Guilford County, North Carolina, seeking to repre-

---

[1]The Federal Communications Act provides that each common telecommunications carrier "shall . . . file with the [FCC] and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication . . . and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a).

sent a class of individuals who are BellSouth customers and who paid the FUSC. Bryan alleged that the FUSC was excessive and that Bell-South had failed to disclose certain information pertaining to the FUSC, in violation of North Carolina's unfair trade practices law.

On March 26, 2002, BellSouth removed the suit to the Middle District of North Carolina, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis that Bryan's claims raised federal questions by challenging BellSouth's tariff. On June 4, 2002, Bryan filed her First Amended Complaint (the "Complaint") in federal court, seeking to sue on behalf of all North Carolina BellSouth customers who paid the FUSC. The Complaint alleged that BellSouth imposes an FUSC that exceeds its required contribution to the USF, that BellSouth does not disclose how it calculates the FUSC, and that BellSouth's use of the term "Federal Universal Service Charge" is misleading.

Based on these allegations, Bryan asserted three separate causes of action. In Count A, she claimed that BellSouth committed unfair and deceptive trade practices, in violation of North Carolina General Statute section 75-1.1, by failing to disclose: (1) how it calculates the FUSC; (2) that it charges customers an amount well in excess of its contribution to the USF for North Carolina services; and (3) that the FUSC includes administrative expenses, costs, and profits.[2] Count A further alleged that BellSouth's use of the term "Federal Universal Service Charge" is unfair or deceptive, as is its representation to customers that the FUSC is paid to the USF. In Count B, Bryan brought a claim for unjust enrichment/restitution, contending that BellSouth unjustly enriched itself by imposing an excessive and unlawful FUSC. In Count C, Bryan alleged breach of the covenant of good faith and fair dealing based on BellSouth's charging an excessive FUSC and failing to make the disclosures described in Count A. Based on these claims, the Complaint sought damages in an amount exceeding $10,000 but less than $74,999 per class member.[3]

---

[2]North Carolina General Statute section 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

[3]Although Bryan seeks, in her Complaint, to represent a class of similarly situated customers, no determination has been made regarding the class status of this dispute.

On June 10, 2002, Bryan filed a motion to remand the Complaint to state court, *see* 28 U.S.C. § 1447, and, on July 3, 2002, BellSouth filed a motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted. In support of its motion to dismiss and in opposition to Bryan's motion to remand, BellSouth maintained that all of Bryan's claims were barred by the "filed-rate doctrine" in that they challenged BellSouth's filed tariff or, in the alternative, that they should be heard first by the FCC under the doctrine of primary jurisdiction.

On February 6, 2003, the court issued its Memorandum Opinion addressing the parties' contentions. *Bryan*, 2003 WL 262333 (the "Opinion"). On that same date, the court entered the Order from which this appeal is taken (the "Order"). In its Opinion, the court first concluded that removal was proper because Bryan presented a federal question by directly challenging the terms of a tariff in her allegations that BellSouth's FUSC was excessive. Opinion at 11. The court then turned to BellSouth's motion to dismiss, explaining that the filed-rate doctrine, also known as the "filed-tariff doctrine," prohibits suits that would have the effect of altering the rates set forth in a carrier's filed tariff. *Id.* at 11-12. Based on this doctrine, the court dismissed those claims that it concluded arose under federal law by challenging the tariff. *Id.* at 13. The court then declined to exercise supplemental jurisdiction and remanded to state court those "remaining claims" that did not challenge the tariff and thus did not present federal questions.[4] *Id.* at 13-14. BellSouth appeals from the portion of the court's Order denying dismissal of Count A and remanding it to state court, maintaining that Count A, like Bryan's other two claims, challenged the tariff, arose under federal law, and should have been dismissed.

---

[4]The court did not specify which claims it viewed as "remaining state law claims." On appeal, the parties agreed at oral argument that the court's Order had the effect of dismissing Count B, the unjust enrichment/restitution claim, and Count C, the breach of contract claim, and remanding to state court Count A, the North Carolina unfair trade practices claim. Bryan has not appealed the dismissal of Counts B and C.

## II.

We turn first to Bryan's assertion that we lack jurisdiction over this appeal. Bryan maintains that jurisdiction is lacking because the Order was "non-final," in that one of her claims was not dismissed. *See generally* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). For this proposition, Bryan relies on Federal Rule of Civil Procedure 54(b), which provides that, "[w]hen more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only *upon an express determination* that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b) (emphasis added). Bryan maintains that, as the court made no such express determination, its Order was not final and is not appealable.

Bryan's assertion does not withstand scrutiny. Admittedly, 28 U.S.C. § 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." However, as the Supreme Court explained in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), § 1447(d) refers only to those situations in which a court has directed a remand for the reasons set forth in § 1447(c); that is, a defect in removal or lack of subject matter jurisdiction. *Quackenbush*, 517 U.S. at 711-12. The Court went on to explain that, where a district court has remanded a lawsuit to state court based on abstention principles, the remand is considered a final order appealable under 28 U.S.C. § 1291. *Id.* at 712-13.

In this situation, the district court explicitly based its remand of Count A on abstention principles, relying on 28 U.S.C. § 1367(c)(3). Opinion at 14. That section provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [providing for supplemental jurisdiction over all claims forming the same case or controversy] if — the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). And we have recognized that a remand order based on § 1367(c) is appealable as a final order pursuant to § 1291. *See Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 606 n.16 (4th Cir. 2002)

(explaining that, under "well-settled precedent," remands based on § 1367(c) are appealable final orders under § 1291); *see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 614-15 (4th Cir. 2001). Because the court remanded Count A pursuant to § 1367(c), its decision constitutes an appealable final order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

### III.

In this matter, the district court remanded Count A to state court because it determined that Count A did not give rise to federal question jurisdiction, and the court declined to exercise supplemental jurisdiction. A district court's determination that it lacks subject matter jurisdiction is a question of law that we review de novo. *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir. 1996).

### IV.

Turning to the issues on appeal, our task is twofold. First, we must determine whether Bryan's North Carolina unfair trade practices claim arises under federal law, in which event the court erred in remanding it. *See Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 609 (4th Cir. 2002) (concluding that "the district court erred when it remanded the Remaining Claims . . . based upon its mistaken belief that it had otherwise dismissed all claims over which it had 'original jurisdiction'"). And if remand was error, we must determine whether Count A is barred by the filed-rate doctrine.

### A.

First, with respect to the existence of federal jurisdiction, we recognize that when, as here, state law creates the plaintiff's cause of action, the lower federal courts possess jurisdiction to hear "only those cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).[5]

---

[5]Additionally, federal jurisdiction exists in those rare instances in which state law claims are completely preempted. *See Beneficial Nat'l*

And we are further cognizant that a filed tariff carries the force of federal law. *See MCI Telecomms. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) (observing that "federal tariffs are the law, not mere contracts"). As one of our sister circuits has explained, "[a] tariff filed with a federal agency is the equivalent of a federal regulation, and so a suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law . . . arise[s] under federal law." *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998) (internal citations omitted).[6] A claim that seeks to alter the terms of the relationship between carrier and consumer set forth in a filed tariff therefore presents a federal question. *See Fax Telecomunicaciones Inc. v. AT&T*, 138 F.3d 479, 488 (2d Cir. 1998) (explaining that a claim "seeking to enforce the filed tariff provides a basis for federal question jurisdiction").

Additionally, the filed-rate doctrine mandates that "the rate of the carrier duly filed is the only lawful charge." *AT&T v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222 (1998) (quoting *Louisville & Nashville R.R. v. Maxwell*, 237 U.S. 94, 97 (1915)). The doctrine's purpose is twofold: to prevent discrimination among consumers and to preserve the rate-making authority of federal agencies.[7] *See Hill v. BellSouth*

---

*Bank v. Anderson*, 539 U.S. 1, 6-9 (2003) (explaining doctrine of complete preemption). Because we conclude that Bryan's cause of action presents a substantial question of federal law, we need not determine whether the doctrine of complete preemption applies.

[6]Although the *Cahnmann* decision was rendered on the basis of complete preemption, which we need not reach, its statement that suits to enforce or invalidate tariffs arise under federal law is beyond dispute and does not depend on any preemption theory, nor do the authorities *Cahnmann* relies upon for this proposition. *See, e.g.*, *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534-35 (1983) (concluding that suit to collect charges due under tariff gives rise to federal jurisdiction), *Louisville & Nashville R.R. v. Rice*, 247 U.S. 201, 203 (1918) (same).

[7]In fact, the Federal Communications Act itself explicitly serves these purposes, providing that "no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation . . . than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified . . . ." 47 U.S.C. § 203(c).

*Telecomms., Inc.*, 364 F.3d 1308, 1316 (11th Cir. 2004); *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). As the Eleventh Circuit recently observed, the filed-rate doctrine serves the purpose of non-discrimination by prohibiting a court from entering a judgment that would serve to alter the rate paid by a plaintiff. *Hill*, 364 F.3d at 1316. "Even if such a challenge does not, in theory, attack the filed rate," the court explained, "an award of damages to the customer-plaintiff would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers." *Id.* We therefore cannot permit any claim to go forward that, if successful, would require an award of damages that would have the effect of imposing different rates upon different consumers. *See Marco Supply Co., Inc. v. AT&T Communications, Inc.*, 875 F.2d 434, 436 (4th Cir. 1989) ("[A] regulated carrier *must* charge the tariff rate established with the appropriate regulatory agency . . . . To do otherwise would be giving a preference to and discriminating in favor of the customer in question.") Similarly, authorizing a court to award damages that would effectively impose a rate different from that dictated by the tariff would usurp the FCC's authority to determine what rate is reasonable. *See Hill*, 364 F.3d at 1317. In sum, we must determine whether Count A of the Complaint would require the court to determine a reasonable rate for the FUSC, thereby presenting a substantial question of federal law and contravening the filed-rate doctrine.[8]

---

[8]We do not imply, as the dissent suggests, that the filed-rate doctrine is "coterminous with the scope of federal question jurisdiction." *See infra* p. 16. *Fax Telecommunicaciones* indeed provides an instance in which a claim did not raise a federal question but was barred by the filed-rate doctrine. *Fax Telecommunicaciones*, 138 F.3d at 486-90 (holding that claim alleging breach of contract in which carrier agreed to charge plaintiff different rate than that set forth in tariff did not raise substantial federal question, but contract could not be enforced due to filed-rate doctrine). In certain circumstances, however, the inquiries merge. As the dissent recognizes, "claims requiring the court to second-guess the reasonableness of [the FCC's rate] determination are properly said to require the court to resolve a substantial question." *Infra* p. 17. And claims requiring a court to make that assessment also run afoul of the filed-rate doctrine, such that both questions can be resolved by the same inquiry.

### B.

Against this backdrop, we now assess whether Count A of the Complaint effectively challenges the reasonableness of BellSouth's filed rate, giving rise to federal question jurisdiction and requiring dismissal pursuant to the filed-rate doctrine. Because only the FCC may decide what charge is lawful, it is beyond dispute that the court was correct to exercise jurisdiction and dismiss Bryan's claims complaining that the FUSC was excessive. The parties disagree, however, as to whether Count A also presents a forbidden challenge to BellSouth's tariff. BellSouth maintains that it does, asserting that, because Count A seeks damages, the court, were Bryan successful, would be put in the position of effectively refunding a portion of the FUSC to Bryan. In the circumstances presented, we are constrained to agree.

In Count A, Bryan alleges that BellSouth's charging and collecting of the FUSC and its failure to make certain disclosures in connection therewith constitute unfair or deceptive acts or practices under North Carolina General Statute section 75-1.1. In Part V of her Complaint, titled "DAMAGES," Bryan alleges, "BellSouth's actions and omissions have been an actual, producing, direct and proximate cause of damages to Plaintiff and to BellSouth's other North Carolina customers in an amount exceeding $10,000." Complaint ¶ 31. Bryan's prayer for damages draws no distinction between her separate counts. With no indication to the contrary, we must view Part V as seeking monetary damages for the acts alleged in Count A.

BellSouth asserts that the monetary remedy Bryan seeks is "a refund of that portion of the FUSC that she considers she was wrongfully induced to pay" and that, in seeking such a remedy, Bryan runs afoul of the filed-rate doctrine. In actuality, Bryan does not specify the nature of her damages in Count A. Nonetheless, BellSouth maintains that any award of damages flowing from BellSouth to Bryan, no matter how calculated, would violate the filed-rate doctrine by refunding a portion of the FUSC to some consumers but not to others and by requiring the court to determine a reasonable rate. Certainly, this proposition finds support in the decisions of our sister circuits. *See, e.g.*, *Hill*, 364 F.3d at 1317 ("Hill's two remaining claims implicate the filed rate doctrine because she seeks purely monetary damages as relief."); *Marcus*, 138 F.3d at 60-62 (barring claim for compensatory

damages because plaintiffs would effectively receive discounted rate and because award would undermine authority of FCC, which had approved billing practice in question). In the circumstances presented here, we need not — and do not — decide whether every award of compensatory damages would serve to challenge a carrier's tariff.

In our view, the Complaint — read in the light most favorable to the plaintiff — nowhere purports to seek any form of damages other than a refund of some portion of the FUSC. And it pleads no facts that would put BellSouth on notice that Bryan intends to seek damages resulting from any injury other than paying the FUSC. In the "FACTS" section of the Complaint, Bryan alleges only that she is a BellSouth customer who was charged and paid the FUSC, that Bell-South charged an FUSC that was excessive, that it failed to disclose how the FUSC was calculated, and that its use of the term "FUSC" was misleading. Complaint ¶¶ 4-8.[9]

At argument, Bryan asserted that one could envision an award of damages that would not challenge the filed tariff. She posited that if BellSouth had fully disclosed all information pertaining to its FUSC, she might have chosen a different carrier that would have charged a lower FUSC, and therefore she would have been damaged in the amount of the difference between the two carriers' FUSCs. Such an award of damages, Bryan maintained, would not require the court to determine the reasonableness of BellSouth's FUSC and therefore would neither present a federal question nor be barred by the filed-rate doctrine. This example is purely hypothetical, however, and nothing in the Complaint suggests such an injury.[10]

---

[9]At oral argument, BellSouth placed significant weight on the fact that Bryan's class action allegations identify only one issue of law or fact common to the class: "[w]hether BellSouth charges an excessive Federal Universal Service Charge to its North Carolina customers." Complaint ¶ 11. The question of whether Bryan has pleaded facts sufficient to support class certification, however, is distinct from that of whether her Complaint as a whole seeks an impermissible form of damages.

[10]Our dissenting colleague asserts that our analysis disregards the rule explained in *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816-17 (4th Cir. 2004), that federal jurisdiction is lacking if there exists any legal theory by which the plaintiff can sustain his claim without raising a substantial

In sum, we conclude that the only plausible reading of the Complaint is that Count A, like the other counts, seeks a refund of a portion of the FUSC.[11] Because the amount of the FUSC is determinatively set forth in BellSouth's tariff, which carries the force of federal law, an action seeking to alter that rate presents a federal question. The district court therefore erred in remanding Count A to state court. And because Count A would require the court to determine a reasonable rate for the FUSC, that claim must be dismissed pursuant to the filed-rate doctrine.

V.

Pursuant to the foregoing, we vacate the district court's Order with respect to Count A and remand for that count to be dismissed.

*VACATED AND REMANDED*

question of federal law. We recognize this rule, of course, but it has no application in this situation. In *Dixon*, as in the decisions on which it relies, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), and *Mulcahey*, 29 F.3d 148, the courts found alternative theories of recovery on the face of the complaint itself. *See Dixon*, 369 F.3d at 817-18 (concluding, "[a]fter considering Dixon's complaint as a whole," that "Dixon's complaint could support a finding of liability . . . under any of the following three theories . . ."); *Christianson*, 486 U.S. at 810 ("[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories."); *Mulcahey*, 29 F.3d at 153 ("Examination of the complaint . . . reveals that the negligence *per se* claim citing the federal environmental statutes was only an alternative theory of liability . . . ."). None of these courts sought to conjure out of whole cloth an alternative theory of liability without some support in the allegations of the complaint, and we decline to do so here.

[11]Because Count A seeks a damage award that presents a challenge to BellSouth's tariff, we need not reach BellSouth's other contentions; i.e., that Bryan's non-disclosure allegations challenge the tariff because Bryan is presumed to know the contents of the tariff, and that Count A is barred by the doctrine of primary jurisdiction.

LUTTIG, Circuit Judge, dissenting:

The majority holds that the plaintiff's state law cause of action against BellSouth for violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, "arises under" federal law within the meaning of 28 U.S.C. § 1331 because it "effectively challenges" the rates set in BellSouth's filed tariff with the FCC. *Ante* at 10. Because this standard has no basis in the Supreme Court's precedent for determining whether statutory "arising under" jurisdiction exists, and because neither the plaintiff's right to relief nor the remedy that the plaintiff has requested entails resolution of any question of federal law, much less "necessarily depend[s] on the resolution of" such a question, I dissent.

A state law claim "arises under" federal law within the meaning of 28 U.S.C. § 1331 in only two circumstances. *Franchise Tax Bd.* v. *Constr. Laborers Vac. Trust*, 463 U.S. 1, 13, 27-28 (1983). The first circumstance, commonly referred to as "complete preemption," exists when "federal law so completely sweeps away state law that any action brought under state law is transformed into a federal action that can be brought originally in, or removed to, federal court." *King* v. *Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003) (citing *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63-64 (1987)). Our court has recently explained that in such cases, "in actuality, the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute." *King*, 337 F.3d at 425; *see also Franchise Tax Bd.*, 463 U.S. at 13 (describing such state law claims as "'really' one[s] of federal law"). The second, and more common, circumstance under which a state law claim can "arise under" federal law is "if a well-pleaded complaint establishe[s] . . . that [the plaintiff]'s right to relief under state law necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28; *Dixon* v. *Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). *Cf. Merrell Dow Pharm., Inc.* v. *Thompson*, 478 U.S. 804, 813 & n.12 (1986) (holding that, even where the plaintiff's right to relief required the resolution of a federal question, the district court did not have statutory federal question jurisdiction where the adjudication of the federal question "would [not] serve congressional purposes and the federal system.").

Because the majority finds jurisdiction under the second of these circumstances, it does not address the question of whether complete preemption is present. *See ante* at 5-6 n.5. There is simply no argument in this case, however, that federal jurisdiction through complete preemption exists. As we recently explained, "the 'touchstone' of complete preemption is 'whether Congress intended the federal cause of action' to be 'the exclusive cause of action' for the type of claim brought by a plaintiff." *King*, 337 F.2d at 425 (quoting *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1, 9 n.5 (2003)); *Marcus* v. *AT&T*, 138 F.3d 46, 54 (2d Cir. 1998) ("[A]fter *Metropolitan Life*, it is clear that the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field."). For this reason,

> a vital feature of complete preemption is the existence of a federal cause of action that replaced the preempted state cause of action. *Where no discernable federal cause of action exists on a plaintiff's claim, there is no complete preemption*, for in such cases there no federal cause of action that Congress intended to be the exclusive remedy for the alleged wrong.

*King*, 337 F.3d at 425 (emphasis added). In light of this direction, the absence of a federal cause of action analogous to the plaintiff's state law NCUTPA claim is fatal to any argument for complete preemption. As the Second Circuit has concluded, "while the FCA does provide some causes of action for customers, it provides none for deceptive advertising and billing." *Marcus*, at 54; *compare*, *e.g.*, 47 U.S.C. § 203(c)(1), 207 (authorizing suit in federal district court to challenge carrier's collection of tariffs which are "greater or less or different" than those filed with the FCC).

Furthermore, even if the FCA did provide a cause of action for deceptive and misleading billing, complete preemption would still be lacking, because Congress clearly intended for there not to be complete federal preemption of plaintiff's state law causes of action. Indeed, the FCA contains a savings clause that provides that "nothing in the [FCA] shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. *See also Metropolitan*

*Life Ins.* v. *Taylor*, 481 U.S. 58, 65 (1987) (stating that "even with" the existence of a cause of action under § 502(a) of ERISA, the Court "would be reluctant to find that extraordinary pre-emptive power . . . that converts an ordinary state common law complaint into one stating a federal claim," without explicit evidence of congressional intent from the legislative history); *Marcus,* 138 F.3d at 54 (finding that "[t]he FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law.").[1]

Accordingly, if the district court possesses subject matter jurisdiction over the plaintiff's remaining state law claim, it must be on the more narrow ground that the plaintiff's right to relief, as set forth in her complaint, "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 13; *Interstate Petroleum Corp.* v. *Morgan*, 249 F.3d 215, 220 (4th Cir. 2001)(*en banc*).

The majority refuses even to apply this established standard for determining federal jurisdiction and adopts instead the different standard of whether a complaint "effectively challenges" a filed rate, *see ante* at 10 (emphasis added) (inquiring "whether Count A of the Complaint *effectively challenges* the reasonableness of BellSouth's filed rate"), a standard derived from cases that considered the applicability of the filed-rate doctrine as a defense to a particular claim, *see, e.g., Brown* v. *MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (noting that "the filed-rate doctrine also bars suits challenging services, billing, or other practices when such challenges, if successful, would have the effect of changing the filed tariff"); *Fax Telecommunicaciones Inc.* v. *AT&T*, 138 F.3d 479, 489 (2d Cir. 1998) (noting that "[i]f this court were to enforce the promised rate and

---

[1]For an example of a statement of congressional intent sufficient to completely preempt a state law claim, *see Metropolitan Life*, 481 U.S. at 65-66 (quoting a direct statement in the House Conference Report on ERISA that "all such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947").

award damages on that basis, we would effectively be setting and applying a rate apart from that judged reasonable by the FCC, in violation of the nonjusticiability strand of the filed rate doctrine."). The primary case on which the majority relies for its adoption of this standard, *Hill* v. *BellSouth Telecomms., Inc.*, 364 F.3d 1308 (11th Cir. 2004), commits without discussion the same mistake as the majority, using, for determination of the existence of federal jurisdiction, the standard developed to evaluate applicability of the filed-rate doctrine as a defense. *Id.* at 1315 (focusing its discussion on the applicability of the filed-rate doctrine, and noting simply that "federal question jurisdiction should have attached to Hill's two remaining state-law causes of action because they implicated the filed rate doctrine.").

This is error plain and simple. Notwithstanding the majority's obvious belief (as well as its disclaimer that it so believes), the filed-rate doctrine is not coterminous with the scope of federal question jurisdiction under section 1331; it is significantly broader. *See Fax Telecommunicaciones*, 138 F.3d at 487-90 (holding that the plaintiff's breach of contract claim did not "arise under" federal law for the purposes of removal but that it was barred by the filed-rate doctrine). It is one thing to provide that "arising under" jurisdiction exists in that narrow class of cases where the plaintiff's right to relief necessarily depends on the resolution of a substantial federal question or Congress has preempted state court jurisdiction. It is quite another to provide that jurisdiction is present so long as the plaintiff's request for relief constitutes an "effective challenge" to the rate set by federal law. Indeed, as this case demonstrates, a claim can easily be characterized as an "effective challenge" to rates set in a tariff filed with a federal agency, even though the adjudication of the claim itself would require the court to decide no federal issues whatsoever. Of course, that a federal court may not have jurisdiction over a claim that would be barred by the filed-rate doctrine is not problematic in the least; the filed-rate doctrine may be raised as a federal defense to a state law claim before a state court just as easily as before a federal court. *See Fax Telecommunicaciones*, 138 F.3d at 486; *see also Merrell Dow*, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction.") (citing *Louisville & Nashville R.R. Co.* v. *Mottley*, 211 U.S. 149 (1908)).

It is clear that the plaintiff's claim does not meet the standard that we must apply, and have consistently applied, in such cases: whether

the plaintiff's right to relief, as set forth in "a well-pleaded complaint," "necessarily depends on resolution of a substantial question of federal law." *See Franchise Tax Bd.*, 463 U.S. at 13; *Interstate Petroleum Corp.* v. *Morgan*, 249 F.3d 215, 220 (4th Cir. 2001) (*en banc*). To prevail on a claim under the NCUTPA, N.C. Gen. Stat. 75-1.1, a plaintiff must prove "'(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business.'" *See*, *e.g.*, *Basnight* v. *Diamond Developers, Inc.*, 146 F. Supp. 2d 754, 764 (M.D.N.C. 2001). None of these elements has anything whatsoever to do with federal law. Moreover, there can be no argument that the plaintiff's claim is, in fact, a claim based on the tariff, which simply has been artfully pled under the NCUTPA; as counsel for BellSouth conceded at argument, the allegedly unfair and deceptive billing and marketing practices at the heart of plaintiff's NCUTPA claim are not addressed in the tariff. *Compare Marcus*, 138 F.3d at 56, *with Fax Telecommunicaciones*, 138 F.3d at 487.

The majority maintains that the plaintiff's claim presents a federal question because "the only plausible reading of the Complaint is that [the count alleging a violation of the NCUTPA] . . . seeks a refund of a portion of the FUSC" and such a refund would require the court to "alter th[e] rate" set forth in the tariff. *Ante* at 12. This contention is simply wrong, for two reasons. First, even if the Complaint were so read, it would not present a federal question. Second, the court is not *necessarily* required to impose a different rate or to refund a portion of the rate in order to award damages to the plaintiff, as there are other viable theories of damages under the plaintiff's Complaint.

As to the first, the determination of a damage award with reference to the tariff rate charged by BellSouth does not pose a federal question. The tariffs BellSouth has filed with the FCC represent a judgment by the government that the FUSC rates included therein are reasonable. For that reason, claims requiring the court to second-guess the reasonableness of this determination are properly said to require the court to resolve a substantial federal question. However, the calculation of damages for the injury caused to the plaintiff by BellSouth's violation of the NCUTPA does not require the court to make any determination about the reasonableness of the rate charged in the tariff. *Compare Fax Telecommunicaciones*, 138 F.3d at 487

(finding no federal question jurisdiction over breach of contract claim where the basis for the claim was "independent of the rate on file with the FCC"). Rather, it seeks to measure the injury caused by Bell-South's omissions and misrepresentation. Put another way, even if the plaintiff's damages are characterized as a "refund" of a portion of the FUSC paid by BellSouth, the amount of the "refund" may only be permissibly determined by reference to BellSouth's misconduct and the plaintiff's reliance on that misconduct. Even if the *consequence* of awarding such damages would be to *effectively* lower the rates for some customers and not for others, the determination of damages would not "necessarily depend" on the court's determination of the reasonableness of the rate, but rather on its determination of the extent to which the billing and marketing practices of BellSouth violated the NCUTPA.

As to the second reason, even if a claim by the plaintiff that she was entitled to a "refund of a portion of the FUSC" would require a federal court to reconsider the reasonableness of a filed rate and thus would pose a federal question, it is incorrect to say that the plaintiff's claim *necessarily* depends on awarding a "refund of a portion of the FUSC." *See Dixon*, 369 F.3d at 816 ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue."). The majority maintains that the Complaint must be read to request a refund because "the Complaint — read in the light most favorable to the plaintiff — nowhere purports to seek any form of damages other than a refund of some form of the FUSC" and otherwise fails to put BellSouth on notice of the plaintiff's intent to do so. *Ante* at 11. However, the plaintiff's Complaint cannot plausibly be read to set forth *any* theory of damages,[2] let alone a single exclusive request for "a refund of some portion of the FUSC." *Ante* at 11.

---

[2]As it pertains to damages, the plaintiff's Complaint alleges that "Bell-South's actions and omissions have been an actual, producing, direct and proximate cause of damages to Plaintiff and to BellSouth's other North Carolina customers in an amount exceeding $10,000.00," J.A. 22 (Complaint ¶ 31), and provides that the plaintiff is entitled to treble damages under section 75-16 of the NCUTPA for BellSouth's unfair and deceptive trade practices. *Id.* (Complaint ¶ 32).

And, in fact, plaintiff's counsel at argument proposed an example of a plausible mechanism for determining damages that does not challenge the amount of the filed tariff: the difference between the FUSC charged by BellSouth and the FUSC for the carrier that Plaintiff might have chosen absent BellSouth's lack of disclosure. The majority dismisses this method of computing damages as "purely hypothetical" and asserts that "nothing in the Complaint suggests such an injury." *Ante* at 11. But looking solely to the plaintiff's Complaint, it is no more "hypothetical" that the plaintiff will seek to prove damages by demonstrating that "she might have chosen a different carrier that would have charged a lower FUSC," *ante* at 11, than it is that she will seek damages of "a portion of the FUSC" that she has already paid to BellSouth. *Ante* at 12.

Thus, because the plaintiff could prove damages under at least one theory that does not require resort to any concept of federal law, her claim does not "arise under" federal law within the meaning of section 1331. *Dixon*, 369 F.3d at 817 ("[I]f the plaintiff can support [her] claim with even one theory that does not call for an interpretation of federal law, [her] claim does not 'arise under' federal law for purposes of § 1331.").

The majority argues that *Dixon* is inapposite because in it and the cases on which it relies, "the courts found alternative theories of recovery on the face of the complaint itself," rather than "conjur[ing] out of whole cloth an alternative theory of liability without some support in the allegations of the complaint." *Ante* at 11-12 n.10. The theory of liability proposed by plaintiff's counsel, however, no more lacks support in the allegations of the complaint than does the majority's "refund" theory. Plaintiff's Complaint, which complains of omissions and misrepresentations, *see* Complaint ¶¶ 19-24, would clearly support a theory that those actions led the plaintiff to purchase a service she would not have otherwise purchased. If anything, that theory is more clearly supported in the allegations of the Complaint than the theory that plaintiff seeks a refund of the portion of the rate that is unreasonable, a theory that has little if any direct connection to the allegations in the Complaint.

It is not only the case, then, that pursuing a refund of a portion of the rate would not *necessarily* depend on resolution of a federal ques-

tion, if the claim for a refund did not rest solely on the reasonableness of the rate. Even if pursuing a refund did depend on resolution of a federal question, it is implausible to read the Complaint so narrowly as to define that remedy as the only supportable calculation of damages.

In sum, the majority's analysis of the district court's subject matter jurisdiction under 28 U.S.C. § 1331 fails to heed even the most basic tenets of the Supreme Court's or this court's direction on the subject, adopting a standard drawn from a possible federal defense to plaintiff's claim, rather than from whether plaintiff's right to relief, as set forth in her Complaint, "necessarily depends on a question of federal law." Under the correct standards, there is no basis on which it may be said that the district court possessed "arising under" jurisdiction over the plaintiff's state law claim pursuant to 28 U.S.C. § 1331. I dissent from the majority's contrary judgment.