[No. B170830. Second Dist., Div. Two. Dec. 15, 2004.]

JENNIFER GALLIVAN, Plaintiff and Appellant, v.
AT&T CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Thomas T. Anderson, Samuel Trussell and Michael Docherty for Plaintiff and Appellant.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, Harvey I. Saferstein and Nada I. Shamonki for Defendants and Respondents.

**OPINION**

**DOI TODD, J.**—The issue presented is whether the federal filed rate doctrine applies to a telephone charge that is included in a tariff voluntarily filed with the Federal Communications Commission (FCC). We find that it does and that the charge is therefore not subject to a claim for damages. The trial court's judgment of dismissal after sustaining a demurrer without leave to amend is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

■ On appeal from a judgment of dismissal following a demurrer sustained without leave to amend, we assume the truth of all well pleaded facts, as well as those that are judicially noticeable, but not contentions, deductions or conclusions of fact or law. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

*The Complaint*

Plaintiff and appellant Jennifer Gallivan sued to recover telephone charges she alleged were imposed fraudulently and in breach of contract by defendants and respondents AT&T.[1] According to Gallivan's complaint, respondents are local telephone companies that provide telecommunications services and products in California. Gallivan is a customer of AT&T, and included in her monthly bill from AT&T is a network access charge of $4.35 for interstate calls. This charge is sometimes referred to as a Subscriber Line Charge (SLC). Gallivan alleged that respondents deceived their customers by advertising a monthly service charge that did not include the SLC and then including the SLC on the bill labeled as an amount "imposed by the FCC." She alleged that this falsely represented to the public that the SLC was collected by the FCC, when in truth the amount was neither mandated by the FCC nor passed through respondents to the FCC. Rather, the SLC paid by appellant was retained by respondents. According to Gallivan, respondents were not authorized by the FCC to assess the SLC. Gallivan sought to represent a class of all California customers of AT&T who were charged the SLC.

On behalf of the class, Gallivan asserted causes of action for breach of contract, unjust enrichment, and fraud by concealment, and sought recovery of all funds paid for the SLC, plus costs and interest.[2]

*The Demurrer*

Respondents demurred to the complaint, asserting several grounds: the claims were barred by the federal filed rate doctrine; the claims were preempted by federal law; and the claims were insufficiently pled. Alternatively, respondents requested that the matter be referred to the FCC for determination under the doctrine of primary jurisdiction.

[1] The respondents are AT&T Corporation, AT&T Communications of California, Inc., AT&T Broadband, and AT&T Broadband of Southern California, Inc. They shall be referred to collectively as AT&T or respondents.

[2] Appellant also alleged individual causes of action for unlawful business practices in violation of Business & Professions Code section 17200. To the extent these claims sought only injunctive relief, they survived demurrer. But appellant abandoned these claims as moot, noting in her opening brief that "[b]y the time of the Superior Court's ruling, Respondent AT&T had spun off its local service to another carrier, and the new carrier's bill did not include the fraudulent statement at issue here."

The parties do not dispute that the SLC was part of a rate tariff that respondents had filed with the FCC. Respondents argued that because the SLC is an FCC-sanctioned charge for an interstate telecommunications service, it is not an "overcharge" or a component of the local rate. They further asserted that under the filed rate doctrine, customers may not bring an action against a telephone company that would invalidate, alter, or add to the terms of an approved tariff. As such, respondents asserted that no cause of action for breach of contract, unjust enrichment or fraud had been stated against them.

In opposition, appellant argued that the filed rate doctrine should have no application because respondents had "never been subject to tariffing requirements" regarding the SLC, that the doctrine did not apply to state law claims for fraud and misrepresentation, that her state law claims did not conflict with federal law and were therefore not preempted, and that she had adequately pled her claims. Appellant also argued that the matter should not be referred to the FCC because resolution of her state law claims would not require any specialized agency expertise.

The trial court sustained the demurrer without leave to amend on the ground that the claims were barred by the filed rate doctrine because monetary damages were sought in the form of a rebate. As an additional ground, the court found that the contract and fraud claims were insufficiently pled. This appeal followed.

## DISCUSSION

### Standard of Review

■ We review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) A judgment based on a dismissal must be affirmed if any of the grounds for demurrer raised by the defendant is well-taken and disposes of the complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### The Filed Rate Doctrine

■ The filed rate doctrine, also referred to as the filed tariff doctrine, is a court-created rule that derives from the tariff-filing requirements of the

Federal Communications Act of 1934. Under the Act, a common carrier is required to file with the FCC and keep open for public inspection "schedules [also known as tariffs] showing all charges . . . and showing the classifications, practices, and regulations affecting such charges." (47 U.S.C. § 203(a).) "Under this doctrine, once a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be 'the law' and to therefore 'conclusively and exclusively enumerate the rights and liabilities' as between the carrier and the customer. Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff." (*Evanns v. AT&T Corp.* (9th Cir. 2000) 229 F.3d 837, 840.)

■ The filed rate doctrine has two primary purposes: "(1) preventing carriers from engaging in price discrimination as between ratepayers (the 'nondiscrimination strand') and (2) preserving the exclusive role of federal agencies in approving rates for telecommunications services that are 'reasonable' by keeping courts out of the rate-making process (the 'nonjusticiability strand'), a function that the federal regulatory agencies are more competent to perform." (*Marcus v. AT&T Corp.* (*Marcus*) (2d Cir. 1998) 138 F.3d 46, 58.) Thus, the filed rate doctrine bars not only lawsuits challenging filed rates or seeking to enforce rates different from the filed rates, but also lawsuits challenging services, billing or other practices when the challenge, if successful, would effectively result in a modification of the filed tariff through the award of damages. (*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 336 [74 Cal.Rptr.2d 55]; *Brown v. MCI WorldCom Network Services, Inc.* (9th Cir. 2002) 277 F.3d 1166, 1170.) "There is no question that the doctrine has been used repeatedly to bar myriad claims seeking monetary recovery." (*Day, supra*, 63 Cal.App.4th at p. 331.)

### 1. *Application of the Filed Rate Doctrine to a Voluntarily Filed Tariff*

Appellant argues that the filed rate doctrine should have no application in today's modern competitive telecommunications market, and that it is particularly inapplicable to a tariff that is not required to be filed by the FCC, like the AT&T tariff here, or to a nonmandatory provision in the tariff, such as assessment of the SLC. To better understand appellant's arguments, it is necessary to place them in historical context.

The filed rate doctrine was originally created during the railroad era to curb monopolistic railroad companies. (*Verizon Delaware v. Covad Communications* (9th Cir. 2004) 377 F.3d 1081, 1088.) The doctrine passed from transportation law to communications law through the tariff-filing requirement in the Federal Communications Act of 1934 (47 U.S.C.

§ 203(a)). (*Verizon Delaware, supra,* at p. 1088.) At that time, "AT&T enjoyed a virtual monopoly over the nation's telephone service industry" and "[t]he 1934 Act was intended to address the unique problems inherent in a monopolistic environment." (*Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1130.)

According to the Ninth Circuit in *Verizon Delaware v. Covad Communications, supra,* 377 F.3d at page 1088 "[t]he doctrine as applied to telecommunications was dealt a body blow by the Telecommunications Act of 1996 [codified as interspersed amendments to the 1934 Act]." "Responding to the desires of the Federal Communications Commission and believers in the free market, Congress gave the FCC broad authority to 'forbear' from regulation where the FCC determined that it was not necessary to assure just, reasonable, nondiscriminatory charges or otherwise to protect consumers and further determined that forbearance was 'consistent with the public interest.' 47 U.S.C. § 160(a). Armed with this authority, the FCC began a massive program of deregulation in favor of regulation by the market, supplemented by state-law remedies." (*Ibid; Ting v. AT&T, supra,* 319 F.3d at pp. 1132–1133.)

The FCC acted to "forbear" from applying the tariff filing requirements by imposing mandatory detariffing on nondominant long distance carriers for their interstate, domestic, and long distance services. Concluding that tariffs were not necessary to ensure that their rates, practices, classifications and regulations are just and reasonable and not discriminatory, the FCC required these carriers to cancel their tariffs. (See Second Rep. and Order (1996) 11 F.C.C.R. 20,730 at ¶ 77.) The FCC noted that detariffing in the long distance marketplace would eliminate the ability of carriers to invoke the filed rate doctrine, which "would serve the public interest by preserving reasonable commercial expectations and protecting consumers." (*Id.* at ¶ 55.) As the *Ting* court pointed out, "[d]uring the course of implementing the 1996 Act, the FCC stated on a number of occasions that one of the major purposes of detariffing was to eliminate the filed rate doctrine and its harmful effects on customers." (*Ting v. AT&T, supra,* 319 F.3d at p. 1145.) "[T]he filed rate doctrine now functions in the telecommunications field as an anomaly. It is a relic, open to repudiation by the FCC." (*Verizon Delaware v. Covad Communications, supra,* 377 F.3d at p. 1089.)

The Telecommunications Act of 1996 recognizes two types of entities that offer local basic telephone service: Incumbent Local Exchange Carriers (ILEC's), the existing regulated companies in a given service territory (47 U.S.C. § 251(h)), and Competitive Local Exchange Carriers (CLEC's), the new entrants to the local telephone markets. It is undisputed that respondents are CLEC's, which offer local telephone service to the public in competition with ILEC's and other CLEC's throughout California.

Appellant alleged in her complaint that only ILEC's are permitted to charge the SLC. She has since conceded that CLEC's are not prohibited from charging an SLC,[3] but she argues that because CLEC's like respondents are not required to file tariffs with the FCC,[4] respondents should not be protected by the filed rate doctrine.

Respondents concede that they are not required to file a tariff or to charge the SLC. But respondents point out that CLEC's remain fully authorized to file tariffs with the FCC that include an SLC.[5] Respondents also point out that they have not been subject to detariffing, and they argued to the court below that *all* local telephone companies have tariffs on file with the FCC. While appellant does not dispute that respondents have not been subject to detariffing,[6] she points to the FCC's statement that it "has, in many instances, chosen not to regulate the rates charged by competitive LECs, including SLCs."[7]

There appear to be no cases addressing the issue of whether the filed rate doctrine applies to a permissive charge in a voluntarily filed tariff. But courts have regularly applied the doctrine to bar claims for monetary relief regardless of whether the FCC has specifically directed or simply allowed the filing of the disputed tariff provision. (See, e.g., *Evanns v. AT&T Corp.*, *supra*, 229 F.3d 837 [dismissing under the filed rate doctrine customer's state law claims relating to collection of a tariffed universal service charge that was not mandated to be passed through to customers] and *Bryan v. BellSouth Communications, Inc.* (4th Cir. 2004) 377 F.3d 424 [directing dismissal of customer's state law claim under filed rate doctrine even though the FCC "permits" but does not mandate carrier to assess and tariff universal service charge].)

---

[3] Respondents had earlier unsuccessfully sought transfer of the case to federal court. In opposing respondents' motion to dismiss before that court, appellant noted that "CLECs like AT&T Broadband may charge an SLC." Furthermore, in a joint initial status conference report filed by the parties before the superior court, appellant stated, "AT&T and other CLECs are not required to assess this charge by the FCC. Rather, this is another discretionary charge imposed by the Defendant."

[4] Appellant cites generally to 47 Code of Federal Regulations sections 69.104 and 69.152 for this proposition. These sections define the amounts and requirements for charges assessed by nonprice cap ILEC's and price cap local exchange carriers on end users that subscribe to local exchange telephone service or Centrex service.

[5] See CLEC Access Charge Order (2001) 16 F.C.C.R. 9,923, paragraph 3 (CLEC's are authorized to file with the FCC tariffs that set forth interstate access charges, which include the SLC) and SLC Review Order (2002) 17 F.C.C.R. 10,868, 10,870, footnote 8 ("Competitive LECs also may impose SLCs on their end-user customers").

[6] Appellant states on appeal that "mandatory detariffing applied only to interexchange service (i.e., the actual long distance tolls), and not to the SLC."

[7] SLC Review Order (2002) 17 F.C.C.R. at page 10,870, footnote 8. See also *In re Access Change Reform*, FCC Docket No. 96-262, Seventh Report and Order and Further Notice of Proposed Rulemaking (2001) paragraph 39, in which the FCC stated that it "continue[s] to abstain entirely from regulating the market in which end-user customers purchase access service."

In *Marcus v. AT&T Corp., supra,* 138 F.3d 46, the court rejected the argument that the filed rate doctrine should be modified to allow nondisclosure claims in light of the increasingly competitive telecommunications market. The *Marcus* court noted that in response to a similar argument to modify the filed rate doctrine in light of changed circumstances, the Supreme Court explained that while it had " 'considerable sympathy' " to such arguments, " ' "such considerations address themselves to Congress, not to the courts." ' " (*Id.* at p. 62, quoting *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.* (1994) 512 U.S. 218, 234 [129 L.Ed.2d 182, 114 S.Ct. 2223].) The *Marcus* court stated: "Like the Supreme Court, we too are sympathetic to the argument that, at least in the telecommunications industry, strict adherence to the filed rate doctrine is no longer required. But absent Congressional authorization or direction from the Supreme Court, we are in no position to modify the doctrine." (*Marcus v. AT&T Corp., supra,* 138 F.3d at p. 62.)

■ We agree. Where there is a valid tariff on file with the FCC, we feel constrained to apply the filed rate doctrine in the absence of definitive authority to the contrary. In reaching our conclusion, we do not lightly reject appellant's argument that the filed rate doctrine should not apply where no tariff is required to be filed. The fact that the FCC does not require CLEC's to file tariffs demonstrates a reluctance on the part of the FCC to regulate the industry. Where an entity is not regulated because it is not required to file its rates with the FCC for approval by that agency, there appears to be little justification for the doctrine. (*Arkansas Louisiana Gas Co. v. Hall* (1981) 453 U.S. 571, 577 [69 L.Ed.2d 856, 101 S.Ct. 2925] [filed rate doctrine "forbids a *regulated entity* to charge rates for its services other than those properly filed with the appropriate federal regulatory authority" (italics added)].) We agree that the "purposes served by the filed rate doctrine, to preserve the FCC's role in the ratemaking process and to ensure rate uniformity, would serve no purpose in an industry with no uniform, filed rates approved by the FCC." (*Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1377 [104 Cal.Rptr.2d 197].)

On the other hand, we cannot ignore that the FCC does, in fact, permit CLEC's to file tariffs and to assess consumers an SLC. Where such rates are on file with the FCC, they remain subject to the exclusive authority of that agency to accept or challenge them. This allows the FCC to ensure that SLC rates are uniform and consistent and not discriminatory. A consumer remains protected to the extent the rate charged conforms to the rate filed because a different rate can be challenged in the courts or with the FCC. (*Cahnmann v. Sprint Corp.* (7th Cir. 1998) 133 F.3d 484, 487; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 88 [96 Cal.Rptr.2d 383]; 47 U.S.C. §§ 206, 207.)

Of course, we recognize that in implementing the Telecommunications Act of 1996 and authorizing the FCC to forbear from regulation and from imposing the tariff filing requirement, Congress intended to replace the old regulatory scheme with one based on market competition in which consumers would be protected in part by state law. (*Ting v. AT&T, supra,* 319 F.3d at p. 1141.) But unlike mandatory detariffing applicable to nondominant long distance carriers, the FCC has not taken steps to prohibit CLEC's from filing tariffs. Under these circumstances, elimination of the filed rate doctrine is more appropriately a matter for federal action.

Appellant's argument that respondents have voluntarily filed the tariff in order to immunize themselves from California's consumer protection laws and from liability for breach of contract and fraud goes too far. As discussed above, to the extent appellant's claims sought only injunctive relief, the trial court properly found that such claims would not be barred by the filed rate doctrine. Moreover, to the extent a plaintiff's claims seek damages that do not impact the filed rate, such a claim would also be allowed to proceed. (See, e.g., *Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 102 [111 Cal.Rptr.2d 711] [where plaintiff claimed carrier "slammed" his toll-free 800 number and he lost business as a result].)

We find that the filed rate doctrine is applicable here.

### 2. *Appellant's Claim for Damages Violates the Filed Rate Doctrine*

██ The trial court concluded that appellant's contract, unjust enrichment and fraud claims were barred by the filed rate doctrine because each sought monetary damages, the net effect of which would be to award a rebate, thereby resulting in a different rate paid by some, though not all, AT&T customers. Appellant contends this finding was erroneous because her complaint "does not allege that the rates defendants charged are inconsistent with the rates filed with the FCC, or that the rates are excessive in light of the services actually provided"; rather, she claims that "defendants, fraudulently . . . failed to disclose, in their advertised rate and promotional material, that their rates included the SLC, and in their billing materials fraudulently misrepresented the SLC as a federally imposed charge, which it is not." While this is an accurate reading of her complaint, appellant ignores the fact that she seeks monetary damages in the form of a refund of the SLC paid. " '[T]he underlying conduct [of the defendant] does not control whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.' " (*Marcus v. AT&T Corp., supra,* 138 F.3d at p. 59, citing *H.J. Inc. v. Northwestern Bell Telephone Co.* (8th Cir. 1992) 954 F.2d 485, 489.)

If appellant were able to prove her claim and recover damages in the form of a refund of the SLC, she would effectively receive a discounted rate for her local phone service. Like the *Marcus* court, we agree that such an award of damages would implicate the nondiscrimination strand of the filed rate doctrine. "[I]f the plaintiff[s] were allowed to collect damages because of their purported reliance upon [the carrier's] non-disclosure, they would have won for themselves a reduced rate for their local telephone service. Nonparty subscribers to the same service would of necessity pay a higher rate. Such a 'discriminatory' result cannot be squared with the filed rate doctrine's mandate of equal rates for equal service." (*Marcus v. AT&T Corp., supra,* 138 F.3d at p. 60.)[8]

Such an award of compensatory damages would also implicate the nonjusticiability strand of the doctrine because plaintiff is asking to be excused from paying the SLC, a rate set forth in AT&T's tariff filed with the FCC.[9] Such an order would therefore "subvert the authority" of the FCC. (*Marcus v. AT&T Corp., supra,* 138 F.3d at p. 61.) We agree with the trial court that the filed rate doctrine bars appellant's claims.[10]

---

[8] Although not discussed by either party, we note that the argument can be made that the nondiscrimination strand of the filed rate doctrine is not implicated where the action is brought on behalf of all California consumers as a class. In *Wegoland Ltd. v. NYNEX Corp.* (2d Cir. 1994) 27 F.3d 17, the court noted that "the concerns for discrimination are substantially alleviated in [a] putative class action," but went on to find that "the class action nature of the proceeding in no way affects the important concerns of agency authority, justiciability, and institutional competence" and that class actions could "frustrate these legitimate interests and might end up costing the consumers even more in litigation expenses." (*Id.* at p. 22.) The court therefore held that the filed rate doctrine applies whether or not plaintiffs are suing for a class. (*Ibid.*) In *Marcus v. AT&T Corp., supra,* 138 F.3d 46, the court noted that the Supreme Court has rejected the suggestion that " 'the development of class actions, which might alleviate the . . . concern about [nondiscrimination,]' made the nondiscrimination principle inapplicable to a putative class action suit." (*Id.* at p. 61, citing *Square D Co. v. Niagara Frontier Tariff Bur.* (1986) 476 U.S. 409, 423 [90 L.Ed.2d 413, 106 S.Ct. 1922].) "We may not depart from this precedent. Until the Supreme Court says otherwise, it seems that nondiscrimination concerns remain viable even in the context of a class action lawsuit." (*Marcus, supra,* at p. 61; see also *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.* (2d Cir. 1995) 45 F.3d 58, 62; and *Bryan v. BellSouth, Communications, Inc., supra,* 377 F.3d 424, 431, fn. 9.)

[9] At oral argument, counsel for appellant asserted that respondents failed to present evidence that AT&T's filed tariff had in fact been approved by the FCC or that it had been subject to any substantive review by that agency. But a tariff that has been accepted for filing by the FCC is by definition reasonable unless and until the FCC, as the " 'legislatively appointed regulatory bod[y] [with] institutional competence' " says otherwise. (*Marcus v. AT&T Corp., supra,* 138 F.3d at p. 61.)

[10] Appellant also contends that her causes of action are not preempted by federal law, that she has sufficiently pled her contract and fraud claims, and that referral of this action to the FCC would be improper. In light of our ruling that the filed rate doctrine bars appellant's claims, we need not address these remaining issues.

### 3. *The Filed Rate Doctrine Applies to Fraud Claims*

■ Appellant contends that the federal filed rate doctrine does not apply to state law claims based on fraud and misrepresentation. We disagree. Such claims have been found to be barred by the doctrine when compensatory damages are sought. In *Marcus v. AT&T Corp., supra,* 138 F.3d 46, the class action plaintiffs brought common law fraud claims alleging that AT&T's advertising and bills were false and misleading because they failed to disclose that residential customers were billed per minute rounded up to the next higher minute, a practice disclosed in the tariff. The court found that these claims were barred by the filed rate doctrine to the extent they sought compensatory damages equal to the difference between AT&T's tariffed rate and the best alternative rate under a competitor's filed tariff. (*Id.* at p. 59.) But the court allowed the claims for injunctive relief to proceed, reasoning that requiring a defendant to change the way it advertises would not result in the plaintiff paying a different rate from other customers or involve judicial intrusion into the rate-making process. (*Id.* at pp. 62–63.)

Similarly, in *Day v. AT&T Corp., supra,* 63 Cal.App.4th 325, the court found the plaintiff's claims alleging misleading and deceptive business practices for failure to disclose the same "rounding up" practice were barred by the filed rate doctrine to the extent plaintiffs sought a disgorgement of the illegal profits. (*Id.* at pp. 329, 337.) As the *Day* court noted, "[t]he net effect of imposing any monetary sanction on the respondents will be to effectuate a rebate, thereby resulting in discriminatory rates. As we have seen, this is a matter which is strictly of federal concern under the Act, and is, therefore, barred by the filed rate doctrine." (*Id.* at p. 337.) But to the extent the plaintiffs sought injunctive relief, the court found the claims were not barred by the filed rate doctrine. (*Id.* at pp. 335–336.)

In *Bryan v. BellSouth Communications, Inc., supra,* 377 F.3d 424, the court found the claim that the respondent had engaged in unfair and deceptive trade practices in failing to disclose certain information pertaining to a Federal Universal Service Charge was barred by the filed rate doctrine where appellant sought a refund of a portion of the charge. (*Id.* at p. 432.) In *Verizon Delaware v. Covad Communications, supra,* 377 F.3d 1081, the court found that a carrier's claims against another carrier for misrepresentation and unfair competition were barred by the filed rate doctrine to the extent appellant sought to recover charges in addition to the filed rate. (*Id.* at p. 1090.) But the court noted that the filed rate doctrine does not preclude judicial proceedings to enforce the tariff or to interpret the provisions of a tariff to determine the carrier's obligations. (*Id.* at p. 1090.)

The two cases on which appellant relies do not support her position. *In re Long Distance Telecommunications Litigation* (6th Cir. 1987) 831 F.2d 627

does not even address the filed rate doctrine. And in *Quayle v. MCI Worldcom, Inc.* (N.D.Cal. Oct. 22, 2001, No. C-00-3694) 2001 WL 1329594 *4, in remanding the case for lack of subject matter jurisdiction, the court noted that the filed rate doctrine was not implicated because the appellants' claims did not challenge an approved practice. (*Id.*, 2001 WL 1329594, *13–*14.) The complaint alleged breach of contract and fraudulent inducement and demanded injunctive relief. (*Id.*, 2001 WL 1329594, *3.) Although the factual background set forth in the opinion is minimal, it appears that the gravamen of the complaint was that MCI engaged in deceptive advertising by misrepresenting that appellants would receive a discount if they used MCI's long-distance services. (*Id.*, 2001 WL 1329594, *2.) But there was no discussion of the relief sought and nothing to suggest that the claims otherwise implicated policies underlying the filed rate doctrine.

## DISPOSITION

The judgment of dismissal is affirmed. Respondents shall recover their costs on appeal.

Nott, Acting P. J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2005.