Filed 12/1/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM VILLARROEL et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br><br>RECOLOGY, INC., et al.,<br><br>    Defendants and Respondents. | A165515<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-21-589528) |

The filed rate doctrine, which has its origins in federal law, provides that rates duly adopted by a regulatory agency are not subject to collateral attack in court.  In this appeal, we address the applicability of the filed rate doctrine to claims involving rates approved by a municipal board.

In 2017, the San Francisco Refuse Collection and Disposal Rate Board (Rate Board) approved an application by defendants Recology, Inc., Recology San Francisco, Sunset Scavenger Company, and Golden Gate Disposal & Recycling Company (collectively Recology) for increased refuse collection rates.  Some years later, plaintiffs William Villarroel, Liese Sand, and Robert Sand (collectively plaintiffs) sued Recology on behalf of themselves and a putative class of Recology customers, alleging the company violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL) and other laws by bribing a city official to facilitate the approval of Recology's application, allowing Recology to charge artificially inflated rates.

1

Shortly after the putative class action was filed, public prosecutors brought a UCL enforcement action against Recology on substantially similar facts. The law enforcement action quickly settled and resulted in a consent judgment requiring Recology to pay over $94 million in restitution to San Francisco ratepayers due to omission errors in Recology's 2017 rate application that led to the approval of the inflated rates.

Thereafter, the trial court sustained Recology's demurrer to plaintiffs' second amended complaint without leave to amend, finding the claims barred by the filed rate doctrine because they involve rates approved by the Rate Board. As we shall explain, although a California version of the filed rate doctrine exists, it does not bar this action as a matter of law because the purposes underlying the doctrine—the so-called "nondiscrimination" and "nonjusticiability" strands—are not implicated by plaintiffs' claims.

The remaining grounds for Recology's demurrer were not specifically addressed by the trial court's ruling. But because the court rejected Recology's res judicata claim in a previous demurrer, we elect to reach that issue and conclude the judgment in the law enforcement action does not pose a res judicata bar to the instant putative class action. As for Recology's remaining challenges to the sufficiency of the specific causes of action pleaded in the second amended complaint, we remand for the trial court's consideration of these issues in the first instance.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Allegations of the Second Amended Complaint**

We accept as true the following factual allegations of the operative second amended complaint. (*Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1498, fn. 1.)

2

Recology is a waste management company providing refuse collection services for residential and commercial properties in the City of San Francisco (City).  Under the 1932 San Francisco Refuse Collection and Disposal Ordinance (hereafter the 1932 ordinance), Recology enjoys a monopoly on refuse collection in the City.

In 2017, former Recology executive Paul Giusti led Recology through a rate increase application process.  During this process, Recology made false representations to the Rate Board regarding its costs, expenses, and other components of proper rates, thereby misleading the board into approving a significant increase in rates charged for residential buildings in the City.  In 2018, Giusti gave the former director of the Department of Public Works (DPW), Mohammed Nuru, $20,000 to secure his support for Recology's efforts to implement a price increase on the " 'tipping fees' " it charged the City to dump materials at a Recology facility.  The illicit payments were funneled through a nonprofit organization.

In 2020, Giusti was criminally indicted on federal bribery and money laundering charges.  A joint task force of the Federal Bureau of Investigation and the Internal Revenue Service's Criminal Investigation Division determined there was probable cause to believe Giusti " 'arranged for Recology to provide a stream of benefits to Nuru worth over $1 million' " in order " 'to ensure Nuru's cooperation in connection with his role in approving Recology's requests for rate increases for residential garbage collection.' " Nuru " 'played a very significant role in the process by which Recology periodically sought to increase the rates paid by the citizens of San Francisco for garbage collection.' "  While the Rate Board makes the final decision on rate increases, the board relies on the recommendation of the DPW director,

3

and thus, Nuru's approval was " 'essential to any request for a rate increase by Recology.' "

The putative class is defined as " '[a]ll current and former rate-paying customers of Recology in the City and County of San Francisco who were subject to Recology's garbage collection rate increases at any time from four years prior to the initial filing of this action through the date of the Court's granting of class certification.' " Plaintiffs assert nine causes of action against Recology for (1) violation of the UCL; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) fraudulent concealment; (5) intentional indirect misrepresentation; (6) breach of contract; (7) breach of the implied covenant of good faith and fair dealing; (8) violation of the CLRA; and (9) negligence per se. In their prayer for relief, plaintiffs seek restitution, injunctive relief, compensatory damages, and punitive damages.

## B. Procedural History

Following plaintiffs' initiation of this suit, the City and the People of the State of California (People), by and through the City of Attorney of San Francisco, filed a UCL enforcement action against Recology in *People of the State of California, et al. v. Recology San Francisco, et al.*, Superior Court case No. CG-21-589528 (hereafter *People v. Recology*).

The People's complaint alleged that Recology "regularly provided gifts of money, meals, and accommodations to City employees with the intent to influence City decisions impacting [Recology]." The complaint further alleged that "[i]n addition" to the bribery, during the 2017 ratemaking process, Recology "omitted substantial revenues in their application for an upward adjustment of rates. That omission was not caught during the 2017 rate-making process, which resulted in the approval of excessive rates. The result

4

is that San Francisco residents and companies have been paying excessive rates since July 1, 2017." The People asserted two causes of action for (1) injunctive relief, restitution, and civil penalties for violation of the UCL; and (2) injunctive relief for violation of Campaign and Governmental Conduct Code (CGCC) section 3.216(a), which prohibits any person from offering or making any gift to a City officer or employee with the intent of influencing their performance of any official act.

Plaintiffs moved to consolidate the two actions. In opposing the motion, both the People and the City contended the purposes of consolidation would not be served because a tentative settlement had already been reached in the law enforcement action. Recology, meanwhile, moved to stay this action pending the settlement proceedings in *People v. Recology*. In June 2021, the trial court denied plaintiffs' motion for consolidation and granted Recology's motion to stay this action until completion of the settlement process in *People v. Recology*.

After the stay was lifted, Recology demurred to the then-operative first amended complaint, arguing that each cause of action was barred by res judicata and the filed rate doctrine, and that plaintiffs failed to sufficiently plead any causes of action. In support of the demurrer, Recology submitted a copy of the consent judgment entered in *People v. Recology*, which attached the parties' settlement agreement and a court-ordered stipulated injunction as the terms of the judgment.

The settlement agreement set forth the core factual allegations of the law enforcement action, stating Recology violated the CGCC by "exceed[ing] the allowable limits on gifts to City employees and City officials in an attempt to influence City decisions affecting [Recology]." Recology also allegedly violated the UCL "by submitting a model as part of its 2017 refuse

5

rate application that inadvertently omitted certain revenue, resulting in a higher rate increase than would have occurred in the absence of the omission."[1]  As part of the settlement, Recology agreed to reimburse ratepayers for the additional amounts they paid for refuse collection due to Recology's inflated rate; to make a $7,000,000 settlement payment to the City for its violations of the UCL and CGCC; and to utilize the adjusted rate sheet attached to the agreement.

As for injunctive relief, Recology was enjoined during a four-year compliance period from making any gift to a City employee or officer, and from making any behested payment, except for charitable contributions to a nonprofit entity not made at the behest of a City employee or officer. Recology was also required to:  make quarterly disclosures of all contributions of money or goods valued at $1,000 or more to any nonprofit entity based in the City; make monthly disclosures of all contacts with City officials; ensure that all Recology employees qualifying as contact lobbyists register with the San Francisco Ethics Commission and comply with CGCC section 2.110 et seq.; disclose any material mistake or error, suspected or confirmed, in prior disclosures; disclose any material differences between actual operating ratio and projected operating ratio, projected as of the most recent rate application process; use the revised refuse rates beginning no later than July 1, 2021; and cooperate with and provide full, accurate, and audited financial statements in response to any reasonable requests for

---

[1]     The settlement agreement defined Recology's " '[o]mission error' " as its "failure to account for revenues in two separate accounts, the Impound Account and the Zero Waste Incentive Account, in its 2017 Rate Application. The spreadsheets submitted with the 2017 Rate Application erroneously omitted those amounts, resulting in lower overall revenues which resulted in a higher rate increase than would have occurred in the absence of the omitted amounts."

6

information from DPW or successor agencies as part of any future ratemaking process.

For restitution, Recology agreed to pay "the full amount of the difference between the rate increases that would have resulted in the absence of the Omission Error and the rate increases that took effect on July 1, 2017, and subsequent rate increases through March 31, 2021, . . . for a total of $94,520,000 (with interest)."

The trial court overruled in part, and sustained in part, Recology's demurrer to the first amended complaint. Relying on *Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037 (*Payne*) and *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10 (*Pacific Land*), the court ruled that res judicata principles are inapplicable in a subsequent private UCL action when the initial suit was by a public prosecutor. The court also determined that because "it is an open question as to whether or not the filed-rate doctrine applies to the allegations as pled, it need not decide this issue based on the current state of the record." Finally, the court sustained, with leave to amend, the demurrers as to the UCL, CLRA, fraud, and contract claims on the ground that plaintiffs failed to sufficiently allege causation. The court, however, overruled the demurrer as to the claims for intentional and negligent misrepresentation, indirect misrepresentation, and fraud by concealment.

Plaintiffs filed the second amended complaint, and Recology again demurred on the grounds of the filed rate doctrine and plaintiffs' failure to state sufficient facts. This time, the trial court ruled the action was barred by the filed rate doctrine. After describing the ratemaking process for Recology's 2017 rate adjustment application, the court concluded that because "Recology both filed and had its rates approved by the Rate Board,"

7

the filed rate doctrine's requirements were met, and the rates could not be collaterally attacked in court. The court sustained the demurrer to the second amended complaint without leave to amend, and plaintiffs timely appealed from the ensuing judgment.[2]

## DISCUSSION

"A demurrer tests the sufficiency of the plaintiff's complaint, i.e., whether it states facts sufficient to constitute a cause of action upon which relief may be based." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.) "On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend." (*Ibid*.)

### A. The Filed Rate Doctrine Does Not Bar Plaintiffs' Claims

The main questions raised in this appeal are whether a general filed rate doctrine exists in California, and if so, whether it bars plaintiffs' claims because rates approved by a municipal rate board are implicated.

The filed rate doctrine originated in the federal courts as a judicially created rule that applies where a regulated entity is required to file tariffs with a government agency authorized to determine whether the rates are just

---

[2] Plaintiffs request judicial notice of various federal court records filed during the pendency of this appeal in the criminal cases against Nuru and Giusti. We deferred our ruling pending consideration of the merits of the appeal, and we now deny the request as unnecessary to the resolution of the appellate issues before us. We do, however, take sua sponte judicial notice of those matters for which judicial notice was requested and properly granted below. (Evid. Code, § 459.) Those matters are: the complaint and consent judgment in *People v. Recology*; the ordinance approving the settlement in *People v. Recology*; the 1932 ordinance; and records from Recology's 2017 rate adjustment application.

and reasonable. (*Gallivan v. AT&T Corp.* (2004) 124 Cal.App.4th 1377, 1382–1383 (*Gallivan*).) "Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." (*Wegoland Ltd. v. NYNEX Corp.* (2d Cir. 1994) 27 F.3d 17, 19 (*Wegoland*).) The doctrine was first articulated in *Keogh v. Chicago & Northwestern Railway* (1922) 260 U.S. 156 (*Keogh*), which held that a private shipper could not recover treble damages under the Sherman Act (15 U.S.C. § 1 et seq.) against railway companies whose rates were filed and approved by the Interstate Commerce Commission (ICC). (*Knevelbaard Dairies v. Kraft Foods, Inc.* (9th Cir. 2000) 232 F.3d 979, 992.) "Although the doctrine has been questioned by many including the Supreme Court itself, it lives on to a limited extent." (*Ibid.*)

Two primary purposes underlie the filed rate doctrine: " '(1) preventing [regulated parties] from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for [the applicable] services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform.' " (*Gallivan, supra*, 124 Cal.App.4th at p. 1382.) The nonjusticiability strand reflects a policy to avoid "enmesh[ing] the trial court in a determination of the reasonableness of the rates" because such matters are "within the exclusive province" of the regulatory agency. (*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 338 (*Day*); see *Wegoland, supra*, 27 F.3d at p. 19 [attack on filed rate "would unnecessarily enmesh the courts in the rate-making process" as " 'courts are not institutionally well suited to engage in retroactive rate setting' "].)

This federal doctrine has been held to bar claims alleging fraud and other tortious conduct by a regulated entity that would, if successful, yield a damages award that effectively constitutes preferential rate treatment for the plaintiff. (See *Gallivan*, *supra*, 124 Cal.App.4th at p. 1382 [doctrine bars all claims that would effectively result in modification of filed tariff through damages award]; *Marcus v. AT&T Corp.* (2d Cir. 1998) 138 F.3d 46 (*Marcus*) [barring class action claims alleging carrier's advertising and bills were misleading for failing to disclose rounding up practice]; *Wegoland*, *supra*, 27 F.3d at p. 22 [refusing to recognize fraud exception to federal filed rate doctrine].)

California courts have applied the federal filed rate doctrine to bar state law claims challenging rates filed with federal agencies. (See, e.g., *Gallivan*, *supra*, 124 Cal.App.4th at p. 1385 [barring fraud claim against telephone companies regarding network access charges for interstate calls because companies voluntarily filed tariffs with Federal Communications Commission (FCC) for the challenged rates]; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 91 (*Duggal*) [barring negligence claim alleging long distance providers' failure to provide faster provisioning and billing services than set forth in tariff filed with FCC]; but see *Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 101 (*Lovejoy*) [not barring fraud claim because it fell within Federal Communications Act savings clause permitting state law actions that do not frustrate purposes of uniformity and agency ratemaking]; *Day*, *supra*, 63 Cal.App.4th at pp. 336–339 [barring deceptive advertising claims for disgorgement but not barring claims seeking injunctive relief].)

Whether the federal filed rate doctrine applies to rates approved by a municipal agency appears to be an issue of first impression. In *MacKay v.*

*Superior Court* (2010) 188 Cal.App.4th 1427, 1448 (*MacKay*), the court held, as a matter of statutory interpretation, that an insurer's use of rating factors approved by the California Department of Insurance could be challenged only through the administrative procedures set forth in the Insurance Code. (*MacKay*, at pp. 1443–1444.)  In so holding, *MacKay* found the federal filed rate doctrine " 'analogous to the scheme explicitly embodied in the Insurance Code.' "  (*Id*. at p. 1448.)  Citing non-California authorities, *MacKay* commented that "[n]umerous state courts have applied the filed rate doctrine to approved insurance rates," including one case noting that, despite its origin in the federal courts, the doctrine " 'has been held to apply equally to rates filed with state agencies by every court to have considered the question.' "  (*Id*. at pp. 1448–1449.)

Relying on *MacKay*, Recology maintains the filed rate doctrine applies to rates approved by agencies at all levels of government, including the municipal Rate Board.  Plaintiffs, however, insist that the doctrine applies only to rates approved by a federal agency and that *MacKay*'s comments on the point constituted mere dicta.  No matter.  Whatever the effect of *MacKay*'s reliance on the filed rate doctrine to buttress its interpretation of the Insurance Code, California appellate courts have rejected a strict application of the federal filed rate doctrine where no federal tariff is involved.

Notably, in *Pink DOT v. Teleport Communications* Group (2001) 89 Cal.App.4th 407 (*Pink DOT*), the court rejected a direct application of the federal filed rate doctrine in an action against a public utility regulated by the California Public Utilities Commission (PUC).  Though the court accepted, for the sake of argument, the public utility's "restrictive view of the federal filed rate doctrine," it declined to apply the doctrine because the

11

public utility had filed its tariff with the California PUC and not with any federal regulatory authority. (*Pink DOT*, at p. 416.) "Since this is a state case with no tariff filed with any federal regulatory agency, the direct application of the federal filed doctrine is inappropriate." (*Pink DOT*, at p. 416.)

While seeming to acknowledge that a state version of the filed rate doctrine could apply to rates filed with the PUC, *Pink DOT* expressly rejected the notion that "the same restrictive notions of liability" in the federal filed rate doctrine "are inherent in the state filed rate doctrine." (*Pink DOT*, *supra*, 89 Cal.App.4th at p. 416.) As *Pink DOT* emphasized, "[t]here is no parallel state filed rate doctrine that would operate to bar *all* state statutory or common law claims"; instead, "there are limits" to that doctrine in California. (*Ibid.*) Relying on the Supreme Court's decision in *Empire West v. Southern California Gas Co.* (1974) 12 Cal.3d 805 (*Empire West*), *Pink DOT* held a public utility could be liable for making false representations about its reliability and ability to implement caller ID to a grocery delivery service that relied heavily on telephone orders. (*Pink DOT*, at pp. 416–417; see also *BullsEye Telecom, Inc. v. Public Utilities Com.* (2021) 66 Cal.App.5th 301, 333 (*BullsEye*) [rejecting application of federal filed rate doctrine to a potential refund award against PUC because petitioners "fail to show the doctrine applies under California law"].)

In turn, the issue in *Empire West* was whether a fraudulent misrepresentation claim effectively sought preferential rate treatment in violation of Public Utilities Code section 532.[3] A gas company prepared a cost

---

[3] This statute provides in relevant part that "no public utility shall charge, or receive a different compensation for any product or commodity furnished or to be furnished, or for any service rendered or to be rendered,

analysis for a utility customer who, in reliance on the analysis, installed a gas heating system. When the operating costs of the heating system exceeded the estimates, the customer sued the gas company for fraud. (*Empire West, supra,* 12 Cal.3d at pp. 807–809.) As the Supreme Court explained, "[s]cheduled rates must be inflexibly enforced in order to maintain equality for all customers and to prevent collusion which otherwise might be easily and effectively disguised. [Citations.] Therefore, as a general rule, utility customers cannot recover damages which are tantamount to a preferential rate reduction even though the utility may have *intentionally* misquoted the applicable rate." (*Empire West, supra,* 12 Cal.3d at pp. 809–810 [because customers are charged with knowledge of published rate schedules, they may not justifiably rely on a utility's lower rate quote to avoid liability for approved rate charges].) However, the court determined the customer was not seeking a reduced rate or other preferential rate treatment; instead, he was claiming the defendant had misrepresented the quantity of estimated gas usage, which resulted "in a substantial understatement of [the customer's] total cost for gas service." (*Empire West,* at p. 810.) In allowing the customer's suit to proceed, the court held that "a utility customer who has been actually damaged by a utility's fraudulent misrepresentations regarding matters not contained in the published tariffs should be entitled to bring suit to recover those damages." (*Id.* at pp. 810–811, fn. omitted.)

*Empire West* was likewise cited as analogous authority in *Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224 (*Cellular Plus*). There, the court held that antitrust claims against two cellular telephone carriers for treble damages under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.)

---

than the rates, tolls, rentals, and charges applicable thereto as specified in its schedules on file and in effect at the time." (Pub. Util. Code, § 532.)

were not barred "even if the fixed prices had been approved as reasonable by a regulatory agency." (*Cellular Plus*, at pp. 1241–1242.) In rejecting the argument that a treble damages award would result in rate discrimination in violation of Public Utilities Code section 453, subdivision (a),[4] *Cellular Plus* first noted that "punitive damages are not an item of compensatory damages and, thus, cannot be construed as an 'adjustment' of customer rates under the Public Utilities Code." (*Cellular Plus*, at p. 1249.) The court further reasoned that "Cellular Plus seeks compensatory damages in the amount and to the extent the fixed prices were excessive. Such damages are not any different from what damages any other customer of U.S. West or PacTel may be entitled to, and Cellular Plus should not be precluded from seeking compensatory damages merely because other customers do not similarly enforce their rights to damages. Accordingly, we conclude this action will not result in any prohibited rate discrimination." (*Id*. at p. 1250.)

As a caveat, we note neither *Empire West* nor *Cellular Plus* mentioned the "filed rate doctrine" expressly by name. Rather, both cases addressed whether claims involving PUC-approved rates violated Public Utilities Code sections 453 and 532. But in substance, these statutes reflect policies similar to those underlying the filed rate doctrine. (See *Bullseye*, *supra*, 66 Cal.App.5th at p. 333 [noting PUC's acknowledgment that Pub. Util. Code, § 532 " 'express[es] the filed rate doctrine' "].) Additionally, *Cellular Plus's* holding was based on its refusal to follow *Keogh* and other federal filed rate

---

[4] This statute prohibits a public utility from giving any preferential or advantageous treatment to a corporation or person, or subjecting any corporation or person to prejudice or disadvantage, as to rates, charges, services, facilities, or in any other respect. (Pub. Util. Code, § 453, subd. (a).)

14

doctrine cases on the grounds they were inapplicable to a California Cartwright Act claim. (*Cellular Plus*, *supra*, 14 Cal.App.4th at p. 1242.)[5]

In short, the foregoing authorities acknowledge the existence of a state version of the filed rate doctrine that applies to rates approved by California agencies. (*Empire West*, *supra*, 12 Cal.3d at pp. 809–811; *MacKay*, *supra*, 188 Cal.App.4th at pp. 1448–1449; *Pink DOT*, *supra*, 89 Cal.App.4th at p. 416.) But they make reasonably clear that the state doctrine has "limits" and is not as "restrictive" as its federal counterpart. (E.g, *Pink DOT*, at p. 416.)

The parties further dispute whether the California filed rate doctrine applies only when a specific legislative scheme bars preferential rate treatment or establishes an exclusive procedure for challenging rates. Plaintiffs contend a relevant legislative scheme is necessary. (See, e.g., *Empire West*, *supra*, 12 Cal.3d at p. 809 [Pub. Util. Code, § 532 forbids public utility from giving preferential rate treatment]; *MacKay*, *supra*, 188 Cal.App.4th at p. 1448 [Ins. Code, § 1860.1, which precludes challenge to approved rates based on laws outside of Ins. Code, is analogous to filed rate doctrine].) Recology vigorously disagrees, but fails to cite any California authority applying the doctrine without what Recology terms a "statutory

---

[5]     *Cellular Plus* acknowledged the "strong similarities" of its facts with *Keogh*, *supra*, 260 U.S. 156, a case which held the federal filed rate doctrine barred an action for treble damages under the Sherman Act. (*Cellular Plus*, *supra*, 14 Cal.App.4th at p. 1241.) But the court concluded *Keogh* was not controlling given the breadth of California's Cartwright Act as compared to the Sherman Act; differences between the regulatory authority of the PUC over the cellular telephone industry and the ICC's authority over common carriers; and the defendants' failure to cite any California decision similar to *Keogh*. (*Cellular Plus*, at p. 1242.) Though *Cellular Plus* commented that the fact of a regulatory agency's approved rate should, at most, "be a factor in determining the amount of damages awarded," the decision rejected the notion that such fact should determine "whether a cause of action exists at all under the Cartwright Act." (*Cellular Plus*, at pp. 1242–1243.)

15

hook."[6]  In any event, we assume for the sake of argument the 1932 ordinance's rate adjustment process is sufficiently akin to a statutory scheme that triggers policy concerns regarding rate uniformity and the authority of the Rate Board.[7]  (See *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 492 [city ordinance has same force within its corporate limits as statute].)  But for the reasons that follow, we conclude the California filed rate doctrine does not bar plaintiffs' claims for injunctive relief, punitive damages, and restitution.

As indicated, plaintiffs' second amended complaint seeks injunctive relief under the UCL and CLRA in order to enjoin Recology's unlawful,

---

[6]      *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081 (*Loeffler*) does not assist Recology on this point, as the Supreme Court concluded in that case that UCL and CLRA claims challenging a retailer's collection of sales tax reimbursements were impermissible given the "comprehensive statutory scheme" under the Revenue and Taxation Code by which such disputes may be resolved.  (*Loeffler*, at pp. 1103, 1123.)

[7]      Under its "Procedure for Adjustment" of refuse collection rates, the 1932 ordinance created the Rate Board, which consists of the Chief Administrative Officer as chairman, the Controller, and the Manager of Utilities. (Boldface omitted.)  The ordinance provides that any affected person, firm or corporation that desires an increase, decrease, or other adjustment or change to the rates, schedules, or applicable regulations may file an application with the chairman, "who shall thereupon refer the same to the Director of Public Works for hearing, report and recommendation."  The DPW director is also in charge of holding public hearings, initiating studies and investigations "pertinent to the application," and making a report to the chairman "setting forth the facts as found by him from the evidence taken and record made at the hearing, and a Recommended Order."  After the report and recommended order are published and notice given, if no objections are filed, "then the Recommended Order shall be deemed the Order of the Rate Board and shall take effect according to its terms without other or further action by the Rate Board."  If there are objections, the Rate Board hears them and shall grant or deny the application in whole or in part and make such order as may be just and reasonable.

16

unfair, and fraudulent business acts and practices as alleged throughout the pleading.  (See Bus. & Prof. Code, § 17203; Civ. Code, § 1780, subd. (a)(2).)  Because this requested relief will have no impact on rates, the filed rate doctrine is not implicated and has no application.  The decision in *Day*, *supra*, 63 Cal.App.4th 325, which involved application of the federal filed rate doctrine, illustrates this point.  There, the plaintiffs alleged claims under the UCL and False Advertising Law (Bus. & Prof. Code, § 17500 et seq.) seeking to enjoin misleading or deceptive practices in the advertising of prepaid phone card rates.  *Day* determined the federal filed rate doctrine was not implicated because the injunctive relief, if granted, " 'would have no impact on the tariff charged.  It would not require [the carrier] to charge more or less than the filed rate, nor would it permit a customer to pay more or less than the filed rate.' "  (*Day*, at pp. 329, 336.)  For the same reasons articulated in *Day*, the California filed rate doctrine does not defeat plaintiffs' claims for injunctive relief.

Plaintiffs also seek punitive damages against Recology for its allegedly willful and fraudulent conduct.  But as already discussed, "punitive damages are not an item of compensatory damages and, thus, cannot be construed as an 'adjustment' of customer rates."  (*Cellular Plus*, *supra*, 14 Cal.App.4th at p. 1249.)  Accordingly, plaintiffs' punitive damages claim[8] is not barred by the California filed rate doctrine.

---

[8]     In tort actions, punitive damages may be recovered where it is proven by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice.  (Civ. Code, § 3294, subd. (a).)  A UCL claim cannot serve as the basis for punitive damages (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1147–1148), but a consumer who suffers damages as a result of an act or practice declared unlawful in the CLRA may recover punitive damages (Civ. Code § 1780, subd. (a)(4)).

Plaintiffs' claims for restitution present a closer question. As Recology observes, the federal filed rate doctrine has been held to bar claims seeking disgorgement of profits because any attempt to calculate the monetary amount would enmesh court in rate-setting process. (See *Day*, *supra*, 63 Cal.App.4th at p. 340.) In this regard, the federal filed rate doctrine "is applied strictly" when "either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." (*Marcus*, *supra*, 138 F.3d at p. 59; cf. *Lovejoy*, *supra*, 92 Cal.App.4th at p. 101 [fraud claim did not contravene federal filed rate doctrine because it fell within statutory savings clause permitting state law actions that do not frustrate purposes of uniformity and agency ratemaking].)

At issue here, however, is the California filed rate doctrine. Given the narrower application of the California doctrine (*Pink DOT*, *supra*, 89 Cal.App.4th at p. 416), we shall assess whether plaintiffs' restitution claims materially implicate the nondiscrimination and nonjusticiability strands that support application of the filed rate doctrine.

First, we observe that plaintiffs bring this action on behalf of a putative class of all residential ratepayers in the City who were subjected to the 2017 rates, and we accept as true the allegation that Recology has a monopoly on refuse collection in the City. As such, any award of restitution based on the allegations of inflated 2017 rates does not appear to implicate the nondiscrimination strand because any such award will inure to the benefit of the entire residential ratepaying class. That is, the award will not result in

18

preferential rate treatment for any subset of residential ratepayers.[9] (Cf. *Cellular Plus*, *supra*, 14 Cal.App.4th at p. 1250 [no prohibited rate discrimination where plaintiffs sought compensatory damages claims that other customers could similarly enforce].)

Second, the gravamen of plaintiffs' claims concerns Recology's bribery, fraudulent misrepresentations, and concealment. These are not matters "contained in the published tariffs" that implicate the nonjusticiability strand of the filed rate doctrine. (*Empire West*, *supra*, 12 Cal.3d at pp. 810–811.) As case law reflects, the nonjusticiability strand posits that courts should not become involved in "second guess[ing] the regulators' decisions and overlay[ing] their own resolution" of rate disputes. (*Wegoland*, *supra*, 27 F.3d at pp. 19, 21.) That is because the regulatory agencies possess the requisite expertise and institutional competence that courts lack, such as specific knowledge of the economics and technology of the regulated industry. (*Nader v. Allegheny Airlines* (1976) 426 U.S. 290, 304–305 (*Nader*).)

But the legal standards governing actions for unlawful bribery and fraudulent concealment of material information fall comfortably within the institutional competence of trial courts. For instance, in *Nader*, *supra*, 426 U.S. 290, the United States Supreme Court held the analogous doctrine of primary jurisdiction[10] did not preclude a plaintiff's fraud claims targeting an

---

[9] *Gallivan* recognized that nondiscrimination concerns are " 'alleviated' " in a putative class action, but the court noted there were still remaining policy concerns regarding agency authority, justiciability, and institutional competence. (See *Gallivan*, *supra*, 124 Cal.App.4th at p. 1387, fn. 8.) We address, *post*, why plaintiffs' claims do not appear to implicate the nonjusticiability strand.

[10] The doctrine of primary jurisdiction, which requires courts to refer specific issues to a regulatory agency for initial determination in order to secure uniformity and consistency in the regulation of business entrusted to

19

airline's overbooking and "bumping" practices. (*Nader*, at pp. 300, 305–306.) The alleged fraud did not implicate the agency expertise of the Civil Aeronautics Board, and as the high court explained, "[t]he standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts." (*Id.* at p. 305; cf. *Cellular Plus*, *supra*, 14 Cal.App.4th at p. 1249 [rejecting application of "primary jurisdiction" doctrine because courts "are accustomed to hearing and deciding claims under the Cartwright Act"].) That is the situation here. Plaintiffs' claims do not challenge the reasonableness of the rates as determined by the Rate Board based on its methods, ratings factors, or institutional expertise; nor do the claims threaten to usurp the Rate Board's authority. Rather, the claims alleging bribery and fraud fall within the category of tort claims that may properly proceed without implicating California's filed rate doctrine. (See, e.g., *Empire West*, *supra*, 12 Cal.3d at pp. 810–811; *Pink DOT*, *supra*, 89 Cal.App.4th at pp. 416–417; *Cellular Plus*, *supra*, 14 Cal.App.4th at pp. 1241–1242, 1249.)

Recology nevertheless insists that restitution can only be calculated "by determining what rate would have been approved but for Recology's alleged wrongdoing," which "would require the court to supplant the ratemaking function entrusted to the Rate Board, and to do so without the Rate Board's considerable institutional advantages." Mindful of the procedural posture of this case, we are not convinced that judicial ratemaking will be necessary to calculate restitution. For instance, Recology offers no reason why the parties should be barred from relying on the calculation methods used to determine

the agency (*Nader*, *supra*, 426 U.S. at p. 303), is closely related to the nondiscrimination and nonjusticiability strands of the filed rate doctrine. (See *Duggal*, *supra*, 81 Cal.App.4th at pp. 88–89.)

restitution in *People v. Recology,* with further adjustments for any additional omissions or other irregularities during the 2017 ratemaking process that are uncovered in the instant litigation. Nor does Recology suggest how such methods threaten to usurp or second guess the Rate Board's authority and determinations.

More to the point, a key distinguishing feature of this case is that a judgment has already been rendered in favor of the City based on an express finding that the 2017 rates were inflated due to omission errors that escaped scrutiny during the ratemaking process. Thus, the legal presumption underlying the nonjusticiability strand of the filed rate doctrine—namely that approved rates are per se reasonable and unassailable (*Wegoland*, *supra*, 27 F.3d at pp. 18–19)—has no practical application here, since there is no dispute the approved rates were excessive. As such, application of the filed rate doctrine at this juncture would be incongruous. In so concluding, we do not foreclose the possibility that further development of the record may establish the necessity of the Rate Board's expertise to calculate a revised restitutionary amount. However, given the narrow scope of the California filed rate doctrine as discussed above, as well as the unique circumstances of this case, we believe one appropriate course in that circumstance would be for the trial court to refer the restitution issue to the Rate Board rather than bar the action outright under a restrictive application of the filed rate doctrine. (See *Nader*, *supra*, 426 U.S. at pp. 303–304 [specific issues may be referred to agency when an action otherwise in the jurisdiction of the court raises a question of the validity of a rate].)

In sum, we conclude the demurrer should not have been sustained based on the filed rate doctrine. In light of our conclusion, we need not

address plaintiffs' additional policy and constitutional arguments against the filed rate doctrine.

## B. Res Judicata Does Not Bar This Action

Because the trial court sustained Recology's demurrer without leave to amend solely on the filed rate doctrine defense, the court did not determine whether the second amended complaint fails to state a cause of action for the other reasons articulated in the demurrer.

As to the specific causes of action pleaded, we observe the second amended complaint contains material pleading differences from the first amended complaint, including the addition of a new cause of action for negligence per se. Because the trial court has not yet had the opportunity to address such differences in the first instance, we will remand to provide that opportunity. (See *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 130–131.) We elect, however, to reach the res judicata issue because the trial court previously considered the same arguments and authorities on Recology's demurrer to the first amended complaint, there are no material changes between the pleadings as to this issue, and the matter is fully briefed on appeal.[11]

As discussed earlier, *People v. Recology* was a UCL enforcement action brought by public prosecutors against Recology for injunctive relief, civil penalties, and restitution, while the instant private putative class action asserts claims under the UCL, CLRA, and common law, with requests for

---

[11]    Although the trial court previously rejected Recology's res judicata argument in its demurrer to the first amended complaint, Recology may demur to an amended pleading on the same basis. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1036.) We reach the issue now because it provides a potential basis for concluding plaintiffs were not prejudiced by the error discussed above. (Code Civ. Proc., § 906.)

22

injunctive relief, restitution, and punitive damages.  A key difference between the two actions is that the settlement agreement in *People v. Recology* characterized Recology's omission errors as "inadvertent[]" and drew no link between those omissions and the allegations of bribery.  Meanwhile, plaintiffs allege here that Recology knowingly concealed and bribed Nuru to "assist in concealing" required information in its 2017 rate adjustment application, leading to the approval of inflated rates.

Notwithstanding these differences, Recology contends the prior judgment in *People v. Recology* operates as a res judicata bar to the instant action.  Recology's principal point is that plaintiffs are precluded from additional recovery because the matters of Recology's bribery and attempts to influence ratemaking were already litigated to a final judgment in *People v. Recology*.  We are not persuaded.

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897.)  A claim is barred by res judicata when:  (1) the claim raised in the present action is identical to a claim litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)  "Privity ' "refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of [res judicata].  [Citations.]'  [Citations.]

23

' "This requirement of identity of parties or privity is a requirement of due process of law.' " ' " (*Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 718 (*Mooney*).) " ' "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." ' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070 (*Seadrift*).) " ' "The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication." ' " (*Ibid.*)

As we shall explain, the doctrine of res judicata has been held inapplicable to a private UCL class action where the prior action was a law enforcement action by public prosecutors. Moreover, even assuming the doctrine might otherwise apply if all the elements were shown, Recology fails to establish that the prosecutors in *People v. Recology* were in privity with plaintiffs so as to justify application of res judicata on the record here.

As the trial court recognized, the controlling authority on this issue is *Payne*, *supra*, 91 Cal.App.4th 1037. There, public prosecutors filed suit against an airline and a collection agency under the UCL and Education Code for conspiring to defraud low-income job applicants out of fees for sales training courses. (*Payne*, at pp. 1040, 1044.) The prosecutors secured stipulated final judgments imposing injunctive and monetary relief against the defendants, and "63 persons who were aggrieved by defendants' misconduct were ordered to receive restitution from" the collection agency. (*Id.* at p. 1039.) Thereafter, 23 individuals (who were not among the 63 persons identified in the law enforcement action) filed a putative class action against the airline and collection agency under the UCL and other laws, and the trial court sustained the collection agency's demurrer to the UCL claim on res judicata grounds. (*Ibid.*) The Court of Appeal reversed, holding that

24

traditional res judicata principles did not apply to the UCL judgment secured by the prosecutors. (*Id.* at pp. 1044–1045.)

Relying on the Supreme Court's decision in *Pacific Land*, *Payne* explained that "[a]n action brought pursuant to [the UCL] by a prosecutor is fundamentally different from a class action or other representative litigation" because " '[a]n action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained. Civil penalties, which are paid to the government [citations] are designed to penalize a defendant for past illegal conduct. The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. [Citation.] While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions.' " (*Payne*, *supra*, 91 Cal.App.4th at p. 1045, citing *Pacific Land*, *supra*, 20 Cal.3d at pp. 17–19.) *Payne* further emphasized that " 'an action by the People lacks the fundamental attributes of a consumer class action filed by a private party. The Attorney General or other governmental official who files the action is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests [citation] and the claims and defenses are not typical of the class.' " (*Payne*, at p. 1045, citing *Pacific Land*, *supra*, 20 Cal.3d at p. 18.)

Based on the foregoing, we conclude res judicata does not bar the instant matter. *People v. Recology* was fundamentally a law enforcement action by prosecutors designed to protect the public, not one to benefit the

25

private parties suing in the instant putative class action. Accordingly, res judicata principles are inapplicable. (*Payne*, *supra*, 91 Cal.App.4th at pp. 1045, 1047.)

Recology argues that *Payne* is distinguishable because the decision repeatedly emphasized that none of the named plaintiffs there were identified as persons entitled to restitution in the prior UCL enforcement action. (See *Payne*, *supra*, 91 Cal.App.4th at pp. 1039, 1040, 1044.) Even so, we do not read *Payne* as hinging on that fact alone. Instead, the decision rests on broader conclusions drawn from *Pacific Land* that a UCL action by a prosecutor is fundamentally different from and lacks the fundamental attributes of a private class action. (*Payne, supra*, 91 Cal.App.4th at p. 1045, citing *Pacific Land*, *supra*, 20 Cal.3d at pp. 17–19.) That is, the primary remedies that a prosecutor seeks—such as injunctive relief and civil penalties—are fundamentally for the public benefit and not to benefit private parties. (*Payne*, at p. 1045.) Thus, although restitution may be sought in the law enforcement action, that remedy is ancillary to the object of the suit. (*Ibid.*)

Recology insists that the restitution award in *People v. Recology* was not ancillary but was "the core remedy sought and secured." We acknowledge that a sizeable restitution award of more than $94 million was obtained in *People v. Recology*, but we are not convinced that the amount of restitution obtained fundamentally changes the primary object of the People in filing suit. The People sought principally to secure, and ultimately achieved, vindication of broader governmental interests by obtaining injunctive relief governing Recology's conduct with City officials and disclosures of contributions and contacts with City officials over a four-year compliance period, as well as a $7 million civil penalty payable to the City for Recology's

26

violations of the UCL and San Francisco CGCC. (Cf. *California v. IntelliGender, LLC* (9th Cir. 2014) 771 F.3d 1169, 1179 [privity is present when government sues for same relief as private plaintiff and does *not* seek to vindicate broader governmental interests].) Meanwhile, in statements before the trial court in opposition to plaintiffs' motion to consolidate, the prosecutor emphasized, "The People's action is a law enforcement action, . . . not a Class Action, nor is it a representative action brought on behalf of the individuals. . . . No individuals are represented in the People's action." Rather, "[t]he settlement is between the People and the City and Recology, not between any individual ratepayer." It is reasonably clear the primary purpose of *People v. Recology* was law enforcement.

Furthermore, even if *Payne* does not bar outright the application of res judicata principles on the facts presented here, Recology fails to establish that the People were in sufficient privity with plaintiffs to justify application of res judicata. Recology's reliance on *Rynsburger v. Dairymen's Fertilizer Cooperative, Inc.* (1968) 266 Cal.App.2d 269 (*Rynsburger*) is unavailing and merely serves to underscore why, under a " ' "close examination of the circumstances" ' " (*Seadrift*, *supra*, 60 Cal.App.4th at p. 1070), privity is lacking here. In *Rynsburger*—which predates both *Pacific Land* and *Payne*—the appellants sued a dairy cooperative for private nuisance and later requested that the governing bodies of three cities bring public nuisance actions against the cooperative, telling the city councils that " '90% of the work had been done and would be made available to the City Attorney.' " (*Rynsburger*, at p. 276.) "Many of the appellants testified in the" public nuisance trial. (*Ibid.*) After the trial court found against the cities on their public nuisance claim, the appellants "reactivate[d]" their private nuisance suit. (*Id.* at p. 274.) The *Rynburger* court concluded the suit was barred by

27

res judicata because it involved "the identical nuisance pleaded and tried" in the public nuisance action, and there was sufficient privity between the appellants and the cities. (*Id.* at pp. 277–278.)

The record here reflects no similar level of cooperation or coordination or any other hallmarks of a " 'sufficiently close' " relationship between the People and plaintiffs in this case. (*Mooney*, *supra*, 138 Cal.App.4th at p. 718; see *Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 467–468 [prior Equal Employment Opportunity Commission (EEOC) case was not res judicata to individual plaintiff's later suit because EEOC prosecuted at least as much, and perhaps more, in the general, public interest than in plaintiff's, and plaintiff "had no litigative participation or control in the EEOC case"].) To the contrary, in filings and remarks to the trial court, the People distanced the law enforcement action from the instant matter, stating "[t]here is nothing that precludes these Class Plaintiffs from seeking the remedies that they seek—with respect to their own distinct litigation," and "[s]hould Plaintiffs secure additional remedies in their separate litigation, they would be additive and would only serve to increase the relief afforded to San Francisco ratepayers." Under these circumstances, plaintiffs should not reasonably have expected to be barred from pursuing this action due to a res judicata effect of *People v. Recology*. (See *Seadrift*, *supra*, 60 Cal.App.4th at p. 1070.)

Finally, Recology argues that application of res judicata is necessary to prevent double recovery. We cannot agree. The trial court may prevent double recovery by simply precluding members of the putative class from recovering any amounts they have received or are entitled to receive under the settlement in *People v. Recology*, while still allowing the putative class to obtain any additional remedies to which they may be entitled.

For the foregoing reasons, we conclude res judicata principles do not bar the instant private putative class action.

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings on the remaining grounds for demurrer.  Plaintiffs are entitled to their costs on appeal.


_____

Fujisaki, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Rodríguez, J.

Trial Court:      City & County San Francisco Superior Court

Trial Judge:      Hon. Andrew Y.S. Cheng

Counsel:          Ongaro PC, Glen Elliot Turner for Plaintiff and Appellant

                  Morrison & Foerster LLP, Joseph R. Palmore for Defendant
                  and Respondent

*Villarroel v. Recology* (A165515)